UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 22-CV-21408-MORENO/GOODMAN

WEST 32ND/33RD PLACE WAREHOUSE
CONDOMINIUM ASSOCIATION, INC.,

    Plaintiff,

v.

WESTERN WORLD INSURANCE COMPANY,

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

In this breach of contract action, Plaintiff West 32nd/33rd Place Warehouse Condominium Association ("the Association" or "Plaintiff") alleges that Defendant Western World Insurance Company ("Western World" or "Defendant") failed to pay all covered damages caused by a nearby crane falling on property covered by the insurance policy. [ECF No. 1-1]. Western World filed a motion for partial summary judgment, contending that Plaintiff's damages should be calculated by using the "price of labor and construction materials as of the time of loss." [ECF No. 27]. Plaintiff filed a response [ECF No. 34] and Defendant filed an optional reply [ECF No. 38].

United States Senior District Court Judge Federico A. Moreno referred to the

Undersigned Defendant's motion for an Order. [ECF No. 29].[1]

For the reasons discussed below, the Undersigned **grants** Defendant's Motion.

I. **CLAIMS AND INTRODUCTION**[2]

Plaintiff maintains a warehouse (the "Property") located in Hialeah, Florida. Defendant issued a commercial property insurance policy to Plaintiff effective July 18, 2019 through July 18, 2020, covering the Property. On October 25, 2019, a crane positioned at an adjacent property fell and landed on the Property, causing damage to the warehouse.

Plaintiff submitted a claim to Defendant, who elected to pay the cost of repairing the warehouse and, after its investigation, paid Plaintiff approximately $525,000. But Plaintiff contends that the cost of repairing the warehouse is approximately $2.2 million. Plaintiff's figure is based on the price of labor and construction materials *as of August 2022*. The cost of labor and construction materials has increased significantly between October 2019 -- the date of the loss -- and August 2022.

During the pendency of the claims process and this lawsuit, Defendant's adjusters

---

[1] Because this is not a case-dispositive ruling, an Order, as opposed to a Report and Recommendations, is appropriate.

[2] The facts in this introduction are derived from the Complaint [ECF No. 1-1], Defendant's Statement of Material Facts [ECF No. 28], Plaintiff's Response to Defendant's Statement of Material Facts and Additional Facts [ECF No. 33], and Defendant's Response to Plaintiff's Additional Facts [ECF No. 38].

2

have prepared multiple estimates, often based on cost of materials at the time the estimate was prepared. At defense counsel's request, Robert DeLoach (Defendant's damages expert) prepared an estimate using the *October 2019* prices.

## II.     LEGAL FRAMEWORK

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citation omitted). Thus, the Court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party must "show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the movant does so, then "the burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). The

opposing party must proffer more than "a mere scintilla of evidence" to show "that the jury could reasonably find for that party." *Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898, 899-900 (11th Cir. 2006) (internal quotations omitted).

Contract interpretation is "a question of law" to be decided by the court "by reading the words of a contract in the context of the entire contract and construing the contract to effectuate the parties' intent." *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1104 (11th Cir. 2014). "Under Florida law, if the terms of [a contract] are clear and unambiguous, [then] a court must interpret the contract in accordance with its plain meaning." *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996). "Although contract interpretation is generally a question of law for the Court, if the contract contains ambiguities, [then] a question of fact for the jury may be presented." *Assa Compania De Seguros, S.A. v. Codotrans*, Inc., No. 13-23563, 2014 WL 11906600, at *3 (S.D. Fla. Sept. 12, 2014).

"The initial determination of whether the contract term is ambiguous is a question of law for the court. Where the terms of the written instrument are disputed and reasonably susceptible to more than one construction, an issue of fact is presented as to the [contracting] parties' intent which cannot properly be resolved by summary judgment." *Strama v. Union Fid. Life Ins. Co.*, 793 So. 2d 1129, 1131 (Fla. 1st DCA 2001); *BKD Twenty-One Mgmt. Co., Inc. v. Delsordo*, 127 So. 3d 527, 530 (Fla. 4th DCA 2012)

4

("[C]ontractual language is ambiguous only if it is susceptible to more than one reasonable interpretation." (emphasis removed)); *Laufer v. Norma Fashions, Inc.*, 418 So. 2d 437, 439 (Fla. 3d DCA 1982) ("A phrase in a contract is ambiguous when it is uncertain of meaning and disputed.").

### III. ANALYSIS

The policy language relevant to Defendant's motion states the following[3]:

E. Loss Conditions

\* \* \*

*2. Appraisal*

\* \* \*

*The appraisers will state separately the value of the property and amount of loss.*

\* \* \*

4. Loss Payment

a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1) Pay the value of lost or damaged property;
(2) Pay the cost of repairing or replacing the lost or damaged property, subject to b. below;
(3) Take all or any part of the property at an agreed or appraised value; or
(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to b. below.

---

[3] The italicized provisions refer to language in the policy which Plaintiff believes is relevant to the issue raised in Defendant's motion. [ECF No. 33].

5

> We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.
>
> *b. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.*

\* \* \*

> 8. Valuation
>
> We will determine the value of Covered Property in the event of loss or damage as follows:
>
> > a. At actual cash value as of the time of loss or damage, except as provided in b. and c. below.
> >
> > b. If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.
> >
> > The cost of building repairs or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at the actual cash value even when attached to the building:
> >
> > > (1) Awnings or floor coverings;
> > > (2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or
> > > (3) Outdoor equipment or furniture.
> >
> > c. Glass at the cost of replacement with safety-glazing material

>  if required by law.

[ECF No. 28-1].

Defendant's argument is simple: The Loss Payment provision provides that the insurer "will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms for the Valuation Condition" and the Valuation Condition provides that the insurer will determine the value of Covered Property "[a]t actual cash value **as of the time of loss or damage**." [ECF No. 27] (emphasis added). Thus, Defendant reasons, the cost of repairs should be limited to the cost as it would have been at the time of the loss or damage.

As support for its position, Defendant turns to now-Chief United States District Court Judge Cecilia M. Altonaga's discussion in *Fla. Plantation Cold Storage, Inc. v. Pac. Ins. Co., Ltd.*, No. 08-22028-CIV, 2009 WL 10667539, at *1 (S.D. Fla. May 15, 2009). In *Fla. Plantation*, the insured argued that the insurer breached the policy because the appraiser valued the property at the time of the appraisal (2009), which was less than what the property would have been valued at had it been valued at the time of the loss (2007). The issue before the *Fla. Plantation* Court was whether an appraiser was bound by the insurance policy's language that the "[insurer] will determine the value [of the insured property] . . . at the time of the loss."

Defendant acknowledges that the *Fla. Plantation* Court was evaluating the effect of

the insurance policy's "time of loss" provision for an appraisal (which is not at issue here), but cites to the following language as support for its position:

> Again, the Policy stated that "[w]e will determine the value ... at the time of the loss." "We" in the Policy refers to the insurer, Pacific. Had Pacific valued the property at 2007 rates, Pacific would certainly have materially breached that express term of the Policy. But the Policy further provided that "[i]f we and you disagree on the value," an appraisal panel would determine the value, and that decision was binding upon the insurer and the insured. Because Pacific and Plantation did not agree on the value of the property, the appraisal panel made the valuation decision and valued the property as of 2007.

*Id. a*t *5 (emphasis and internal citations to the record omitted; alterations in original).

Defendant says that because the relevant language in the instant case is comparable to the language in *Fla. Plantation*, which was "clear as to the parties obligation to determine value as of the time of loss or damage[,]" *id.*, the "cost of repair [in this case] must be calculated by using the price of labor and materials as of October 2019." [ECF No. 27].

> Plaintiff responds that
>
> Defendant's reliance on Fla. Plantation is completely off point because: (1) *Fla. Plantation* [sic] analysis of valuation is irrelevant to Defendant's argument to use the time-of-loss price list to calculate the cost of repairing or replacing, which is never analyzed in *Fla. Plantation*; (2) *Fla. Plantation* holds the later in time valuation applicable, inapposite to Defendant's argument to look to the earlier time of loss date; and (3) in direct contradiction to Defendant's position, Pacific Insurance adjusted Fla. Plantation's claim using updated then-current price lists[.]

[ECF No. 34 (emphasis removed)].

8

In Plaintiff's view, the language upon which Defendant relies is pure *dicta* and, in any event, discusses only the determination of the property's value, not the determination of the cost of repairing or replacing the damaged property. *Id.* However, as Defendant notes in its reply, Plaintiff cites no authority in support of its position; rather, Plaintiff's only argument is to say that Defendant's authority is "inapposite." [ECF No. 38].

Instead of providing any legal authority, Plaintiff focuses on Defendant's post-claim actions -- i.e., the estimates created by Defendant's adjusters using prices which post-date the time of loss. [ECF No. 34 ("Defendant prepared several estimates between December 2019 and 2022 and all but one used the current Exactimate price list, not the price list from the October 2019 date of loss.")]. Plaintiff also offers its own interpretation of the policy's language and says that the "Loss Payment and Valuation provisions of the Policy cited by Defendant in support of its argument never state the price list from the time of loss must be used over the updated then-current price list; rather the portions Defendant points to deal with valuation of the insured property." *Id.*

Defendant disagrees with Plaintiff's interpretation of the policy and says that "Plaintiff's interpretation ignores key policy language that negates its position." [ECF No. 37]. Defendant also says that Plaintiff's noted differences between the instant case and *Fla. Plantation* are of no import and that Plaintiff's attempt to rely on parol evidence

9

should be rejected. *Id.*

If the language of a contract is unambiguous, then the Court may not look to outside factors to determine the meaning of the contract. *Fireman's Fund Ins. Co. v. Tropical Shipping & Const. Co.*, 254 F.3d 987, 1003 (11th Cir. 2001) ("[I]n the absence of ambiguous language, a court may not look to parol evidence in ascertaining the intent of the parties to an insurance contract."). In other words, "if a policy provision is clear and unambiguous, it should be enforced according to its terms." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528, 532 (Fla. 2005). Furthermore, courts may not "'rewrite contracts or add meaning to create an ambiguity, and an ambiguity is not invariably present when a contract requires interpretation.'" *Fireman's Fund Ins. Co.*, 254 F.3d at 1003-04 (quoting *Gas Kwick v. United Pac. Ins. Co.*, 58 F.3d 1536, 1539 (11th Cir. 1995)).

The policy language at issue here is unambiguous. Thus, the Undersigned need not look towards any evidence beyond the four corners of the policy to determine its meaning. Although Plaintiff advances an interpretation of the contract which would exclude costs associated with repair and/or replacement from the limitations of the Valuation provision, such a reading necessarily ignores and renders without meaning other relevant portions of the contract.

"The ordinary rule in contract interpretation is that an 'interpretation giving reasonable meaning to all provisions of a contract is preferred to one which leaves a part

10

useless or inexplicable.'" *Gherardi v. Citigroup Glob. Markets Inc.*, 975 F.3d 1232, 1239 (11th Cir. 2020); *In re FFS Data, Inc.*, 776 F.3d 1299, 1304 (11th Cir. 2015).

Plaintiff notes that Provision 8.a. states that "[The Insurer] will determine the *value* of the Covered Property . . . [a]t the actual cash value as of the time of loss or damage. Thus, Plaintiff says, because there is no mention of *repairs* or replacements, the Provision does not apply to repairs and replacements. This urged interpretation, however, would require the Undersigned to read out other relevant provisions from the contract.

Notably, Provision E.4. states that "[The Insurer] will determine the value of lost or damaged property, *or the cost of its repair or replacement*, in accordance with the applicable terms of the Valuation Condition. [ECF No. 28-1]. Further, Provisions 8.b.(1)-(3), c. -- which modify or provide exceptions to Provision 8.a. -- address exclusively issues of repair and/or replacement. Thus, if Plaintiff's view were accepted -- and the Valuation provision does not apply at all to the cost of repair or replacement -- then this language in the policy would be meaningless.

Date of loss provisions must be enforced regardless of which party would benefit from the provision's application. For example, in *Farmland Indus., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 359 F. Supp. 2d 1144, 1148 (D. Kan. 2005), the court looked to multiple provisions of the contract to determine that "natural gas" qualified as a petroleum product, which was subject to a settlement of the "market value thereof at the

time and place of the loss." The Court rejected the plaintiff's contention that such an application would be inequitable because the price fluctuates and stated that unlike tort cases, "the express contractual provisions . . . provide[] the appropriate damage valuation. *Id.* at 1149. Thus, even though the price of natural gas had increased since the loss occurred, under the contract, the plaintiff was entitled to only the price at the time of the loss.

In *Hartford Fire Ins. Co. v. Producer's Gin of Hernando, Inc.*, 326 So. 2d 807, 808 (Miss. 1976), it was the insurer that attempted to escape a time of loss provision. At the time of loss, cotton was valued at approximately 78 cents a pound. *Id. a*t 810. The insurer argued that value should have been limited to 30 cents a pound -- a price which the plaintiff had agreed to sell the product for at around the time of loss. The court rejected this argument from the insurer and noted that the policy provided that the insurer "agreed to pay the cash value of the cotton at the time of loss." *Id.* It was irrelevant that this award provided a windfall because to permit otherwise would be to violate the contractual agreement between the parties.

In summary, date of loss provisions are enforced by courts regardless of which party the provision benefits in a lawsuit. Here, the plain language of the policy provides that repairs and replacements are to be valued at the time of loss. Plaintiff's alternative reading of the policy is illogical and would render multiple sections mooted or

superfluous. Moreover, although Plaintiff argues that Defendant's authority is irrelevant to the instant matter, Plaintiff provides *no* alternative authority supporting its novel reading of the policy.

## IV. CONCLUSION

Based on the above reasoning, the Undersigned **grants** Defendant's Motion for Partial Summary Judgment. The cost to repair Plaintiff's damaged property must be calculated by using the price of labor and construction materials as of the time of loss.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on May 5, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All Counsel of Record